# Bonny G. Rafel, LLC

17 Hanover Road, Suite 410
P.O. Box 97
Florham Park NJ 07932-0097
Phone: (973) 865-2600
Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| KENNETH BYRA,<br><br>        Plaintiff,<br><br>v.<br><br>HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY, as successor to AETNA LIFE INSURANCE COMPANY and AETNA LIFE INSURANCE COMPANY individually;<br><br>        Defendants | Civil Action No.<br><br>**COMPLAINT** |

Plaintiff, Mr. Kenneth Byra, by his attorney, brings this action against Aetna Life Insurance Company ("ALIC") and Hartford Life and Accident Insurance Company ("Hartford") as successor to ALIC under the Employee Retirement Income Security Act ("ERISA") U.S.C. § 1001 *et.seq.* pursuant to § 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B).

1.    This is a claim seeking payment of disability income benefits and other equitable relief to Mr. Kenneth Byra (hereinafter "Plaintiff" or "Mr.  Byra") pursuant to his employer's ERISA Plan, namely, Societe Generale Welfare Plan (a/k/a the "Societe Generale Group Benefits Plan" hereinafter "the Group Benefits Plan" or "The Plan") providing long-term disability benefits to employees of Societe Generale. ("Societe Generale")

2.     The Societe Generale Welfare Plan for long term disability is underwritten and funded through a contract of insurance issued by ALIC under Group Policy #GP-285018-GI (the "Policy"), with an effective date of January 1, 2017.

3.     As an employee of Societe Generale as of January 2016, Mr.  Byra qualified as a participant in the Group Benefits Plan, as defined by ERISA 29 U.S.C. § 1001 et. seq. and was entitled to coverage for benefits including disability coverage.

4.     Plaintiff Mr. Byra brings this action pursuant to § 502(a)(1)(B) of ERISA (29 U.S.C. § 1132(a)(1)(B)) due to Defendants' February 1, 2021 denial of his claim for long term disability ("LTD") benefits.  The denial is in direct contravention of the Plan and the Policy's requirements, terms and conditions because Defendants were fully aware of Byra's chronic medical conditions which entitle him to the continued payment of LTD benefits but in breach of the policy denied him LTD benefits.

5.     This Complaint alleges the following: (1) Defendants unlawfully and unreasonably, arbitrarily and capriciously denied Mr. Byra benefits without justification and without granting him a full and fair review of his claim for benefits; (2) Defendants improperly rejected and ignored the opinions of Mr. Byra's treating specialists in an attempt to deprive him of LTD benefits due; (3) Defendants improperly introduced extra-contractual requirements beyond the proof of claim set forth in the Plan;  (4) Defendants improperly conducted a biased review of the claim, relying on unsupported medical file reviews; (5) Defendants failed to provide a reasonable claims procedure that would yield a decision on the merits of Mr. Byra's claim within the framework of ERISA; (6) Defendants violated ERISA and its own claim procedures with the intent of furthering their own financial interests in bad faith; (7) Defendants failed to discharge its claims processing duties "solely in the interests of the [Plan] participants and beneficiaries," in accordance with U.S.C.

§1104(a)(1); (8) Defendants disregarded that Mr. Byra was determined disabled by the Social Security Administration under a standard that requires he meet a burden higher than the standards imposed by the Plan, i.e., that he be unable to engage in any "Substantial gainful activity." 42 U.S.C. § 423(d)(1)(A).

6.    By this action, Mr. Byra seeks (i) reinstatement of long-term disability insurance payments under Policy #GP-285018-GI retroactive to January 30, 2021; (ii) prejudgment interest pursuant to 29 U.S.C. §1132(a)(1)(B) or 1132(a)(3); (iii) to obtain a judicial declaration that payment of such benefits shall continue subject to the Group Benefits Plan and Policy terms and conditions; (iii) costs and attorney's fees pursuant to 29 U.S.C. §1132(g) and ERISA §502(g).

## JURISDICTION, VENUE and PARTIES

7.    This Court's jurisdiction is invoked pursuant to 28 U.S.C. §1331 and 29 U.S.C.  §1132 (e)(1) and §1132(f).  Plaintiff's claims "relate to" an "employee welfare benefit plan" as defined by ERISA, 29 U.S.C. §1001 et. seq.  The subject Group Benefits Plan constitutes a "plan" under ERISA.

8.    Mr.  Byra is currently and was at all times relevant to this claim a resident of Union County, New Jersey.

9.    Beginning in 2016, Mr. Byra was employed by Societe Generale, a large multinational investment banking and financial services firm, headquartered in Paris, France, with local offices in the United States in New York City, NY.

10.    Societe Generale is the Plan Sponsor and the Plan Administrator.

11.    Venue is proper under 29 U.S.C. §1132 (e) (2); 28 U.S.C. §1391 because an action may be brought in the district where the Plan is administered, where the breach took place, or

where a defendant resides or may be found.   Specifically, Plaintiff worked in this district, participated in the employee benefit plan at issue within this district, resided in this district at the time defendants failed to deliver benefits to him, and interfered with his ERISA rights.

12. In November 2017, Hartford acquired ALIC's group life and disability business through a reinsurance transaction.

13. Hartford has power of attorney to administer claims arising under group life and disability policies and plans issued by ALIC including the Policy #GP-285018-GI and to defend litigation filed against ALIC.

14. The Hartford acquisition of ALIC's group life and disability business was accomplished through a series of agreements, including a reinsurance agreement.

15. Through the acquisition, ALIC transferred to Hartford 100% of the insurance risk for the liabilities under the applicable Group Insurance business insurance policies, including the Policy #GP-285018-GI.  ALIC remains liable to the policyholders of the reinsured policies.

16. On or about November, 2017, ALIC and Hartford entered an Administrative Services Agreement.

17. Under the Administrative Services Agreement Hartford agreed to provide administration services including the administration of claims under the reinsured policies.  Hartford agreed to provide administrative services to the claims under the Societe Generale policy.

18. Under the terms of the Administrative Services Agreement, Hartford was authorized to issue renewal contracts in ALIC's name. In the years 2018-2021 Hartford issued renewal contracts for Societe Generale in ALIC's name.

19. Hartford provided claims administrative and management services for the Societe Generale policy, particularly the long term disability claim of Mr. Byra.

20. Hartford is an indemnity reinsurer of disability insurance issued by ALIC including Policy #GP-285018-GI.

21. The Byra claim is covered under the Group Policy #GP-285018-GI.[1]

22. ALIC is liable for any LTD benefits determined to be due to Mr. Byra under the Societe Generale policy despite the Group Insurance Sale to Hartford.

23. Hartford is liable for any LTD benefits determined to be due to Mr. Byra under the Societe Generale policy.

24. At all times relevant to the claims asserted in this Complaint, ALIC was a fiduciary of the LTD Plan within the meaning of ERISA 29 U.S.C. §1003, 29 U.S.C. §1002 (21) (A).

25. ALIC delegated its fiduciary duties to Hartford who processed the claims of the LTD Plan and ALIC Policy, made all determinations for benefits, and exercised authority and control over the payment of LTD benefits.

26. Pursuant to 29 C.F.R. § 2560.503-1, Hartford employees have acted as the claims administrator of the Policy pursuant to which Mr. Byra is entitled to disability benefits under the LTD Plan.

27. The appeal was filed in this matter on October 14, 2021.

28. Defendants failed to decide the appeal by the deadline of 90 days from the submission of the appeal, January 13, 2022.

29. Defendants continued to seek extensions on the deadline since it had not completed its appeal review, most recently on July 7, 2022.

30. There has been no determination of the appeal as of August 5, 2022.

31. Mr. Byra has exhausted all administrative remedies under the Plan claims procedure.

---

[1] A copy of the Booklet-Certificate is attached as Exhibit A.

## THE PLAN AND APPLICABLE STANDARD OF REVIEW

32. ALIC drafted the Policy providing long term disability benefits coverage to the employees of Societe Generale.

33. Societe Generale Plan documents including the Booklet- Certificate and Group Insurance Policy issued by ALIC do not contain language granting ALIC discretionary authority to construe or interpret the terms of the Plan or to determine the eligibility for benefits.

34. ALIC and Hartford lacked the discretionary authority to construe or interpret the terms of the Plan and determine eligibility for disability benefits under the Plan.

35. N.J.A.C. § 11:4-58.3 invalidates any clause in an insurance policy or Plan which delegates the sole discretion to decide ERISA benefit claims to an insurance company as of January 1, 2008, well before Mr. Byra's claim for benefits arose. Any Policy language purporting to grant discretion to ALIC is void and unenforceable.

36. A *de novo* standard of review applies to this case.

37. The Policy provides monthly LTD benefits to eligible employees of Societe Generale if they satisfy the burden of proving their disability pursuant to the qualifiers set forth in the Policy following a twenty-six (26) week elimination period.

38. The Policy, specifically the Booklet-Certificate provides that the Test of Disability is: From the date that you first became disabled and until monthly benefits are payable for 24 months you meet the test of disability on any day that:

- "you cannot perform the material duties of your own occupation solely because of an illness, injury or disabling pregnancy-related condition; and Your earnings are 80% of less of your adjusted pre-disability earnings.

39. The Policy, specifically the Booklet-Certificate provides that the Test of Disability after the first 24 months of your disability that monthly benefits are payable, you meet the plan's test of disability on any day that:

- "you are unable to work at any reasonable occupation solely because of an illness, injury or disabling pregnancy-related condition."

40. The Policy, specifically the Booklet-Certificate defines "Material Duties" as follows:

- "duties that are normally needed for the performance of your own occupation; and cannot be reasonably left out or changed.  However, to be at work more than 40 hours per week is not a material duty."

41. The Policy, specifically the Booklet-Certificate defines Own Occupation as follows:

- "the occupation that you are routinely performing when your period of disability begins. Your occupation will be viewed as it is normally performed in the national economy instead of how it is performed: for your specific employer; or at your location or work site; and without regard to your specific reporting relationship."

42. The Policy, specifically the Booklet-Certificate defines Reasonable Occupation as:

- "This is any gainful activity for which you are or may reasonably become, fitted by education, training or experience, and which results in or can be expected to result in, an income of more than 60% of your adjusted pre-disability earnings."

43. The Policy provides that the amount of Disability Income Benefits is 60% of Basic Monthly Earnings not to exceed a Maximum Monthly Benefit of $12,500.00.

44. Mr. Byra's pre-disability income was $220,000.00; $18,333.33/month. Mr. Byra's LTD benefit was calculated to be $11,000.00 less other income.

45.   The Policy includes an offset provision for Social Security disability benefits.

46.   Societe Generale pays 100% of the coverage for LTD benefits under the Policy for their employees.

47.   The Maximum Benefit period for Mr. Byra under the Policy is to normal retirement age under the Social Security Act, age 67.

## BACKGROUND

48.   Mr.  Byra, age 48, has a Bachelor's of Science Degree from Devries University. He worked as a foreign exchange sales trader for several financial firms over the years, and joined Societe Generale in 2016.

49.   Plaintiff's duties involved managing the liquidity of client's portfolios, servicing their accounts on the active foreign exchange trading desk, executing foreign currency exchanges over the counter, cash, currency options and EFP transactions. He monitored and understood the fluidity of market trends across all FX products, and kept customers updated on market news and views. He was fluent on international market conditions, and macroeconomics.  He received and digested information provided by various communication sources including, live-feed internet, phone conferences and chats, and information exchanged with colleagues on the trading desk. He placed the orders of his clients; there was no room for error with his high stakes position. His job required him to travel to see clients in the U.S. and abroad.

50.   Mr. Byra suffered significant chronic back pain, radiating down his legs for many years related to herniated discs, radiculopathy and degenerative disc disease. Treatment included extensive physical therapy, medications including NSAIDs, steroids, muscle relaxers, opioids.

51.  In 2017, Mr. Byra attempted to accommodate his condition by using a stand - up desk at work, hoping that it would help, but he could not sustain being at his desk, either sitting or standing, required of his job. The chronic pain impacted his concentration and focus to the extent that he was making costly mistakes, and placed orders for his clients in error.  By April 13th, 2018, Mr. Byra began medical leave as his condition interfered with his ability to sustain the physical and cognitive demands of his high stakes trading position.  Just weeks later, he suffered cervical injuries when involved in a car accident.

**SHORT TERM DISABILITY CLAIM**

52.  As a full time employee of Societe Generale, Mr. Byra qualified for STD/salary continuation benefits which provided for income replacement for the first six months of disability.

53.  Societe Generale self-funded the Plan's salary continuation plan and retained ALIC to process and adjudicate claims for the Plan.

54.  Mr. Byra filed for STD benefits with Societe Generale handled by Defendants as the claims administrator.  He explained that the conservative treatment that he has received provided no long lasting relief and he cannot sit for more than 10-15 minutes before the pain intensifies to an 8/10.  Defendants approved of the STD claim based on the medical records provided and Attending Physician Statements submitted.  Defendants handled the statutory NY State claim as well, which was approved.

55.  During the six months of STD, Mr. Byra continued treating with Dr. Jonathon Kuo, board certified in Pain Management, who performed epidural steroidal injections, thoracic facet blocks and lumbar facet radiofrequency ablations.

56.  In June 2018, Mr. Byra came under the care of board certified Physiatrist, Dr. Allan Tiedrich, who performed orthopedic and neurologic examinations, revealing significant spams,

range of motion limitations, tender trigger points and radiculopathy.  He noted in his records his patient's difficulty sitting, and initiated a course of medication management which continues to the present.

57.  Objective testing included x-rays, and a cervical MRI in July 2018 that revealed cervical disc bulges with encroachment on the ventral margin cord, MRI of the lumbar spine showing spinal stenosis and disc bulges at L3-4 and L4-5.

58.  The treatment that Mr. Byra received from his treating doctors did not provide any long standing relief of his chronic lumbar spasms, intense back pain and radiculopathy into his lower extremities. His cervical pain and radiculopathy also interfered with his focus and concentration, and pain medication provided some relief but side effects included fatigue.

## LONG TERM DISABILITY CLAIM

59.    On October 10, 2018, Hartford's employee, David Gilbert reviewed the claim and determined that the medical information supported an approval of the LTD claim as of that date. He recommended an update in several months to assess ongoing function.  Hartford Ability Specialist Blakely Unruh noted that "prognosis for significant improvement in this claimant's functional work capacity will be determined on his response to pain management services" … and information from the claimant.

60.    By August 2018 Mr. Byra came under the care of Board Certified Pain Management Dr. Wayne Fleischhacker specifically to treat his cervical condition. His treatment included facet joint injections, radiofrequency ablations for the cervical region, physical therapy and medication management.

61.  Dr. Kuo continued to treat Mr. Byra for his lumbar condition, noting that his clinical evaluations of Mr. Byra, reveal significant symptoms; he administered radiofrequency nerve

blocks, facet injections and epidural steroid injections to his patient's thoracic and lumbar spine. Dr. Kuo has never released him to work, due to the chronic pain and restrictions he suffers from.

62. Dr Kuo's colleague, Matthew Kohler, MD. treated Mr. Byra on occasion, and completed the Hartford Capabilities and Limitations Worksheet on April 1, 2019, and Attending Physician's Statements on May 17, 2019, and June 11, 2019, noting that due to lumbar radiculopathy, degeneration of lumbar inter vertebral disc, thoracic radiculopathy, he cannot sit, stand or walk for durations and is unable to work.

63. Defendants continued to approve of the LTD claim based on the medical information provided, and interviews with Mr. Byra.

64. On January 28, 2020, Dr. Kuo completed an Attending Physician's Statement, noting that Mr. Byra's current status was unchanged, that he continued to experience the same symptoms related to his lumbar spine that initially disabled him, and that he remained totally disabled.

65. Defendants required Plaintiff to file for Social Security Disability Income benefits, and offered the services of their vendor, Allsup, to represent him since SSDI benefits are an offset to LTD benefits.

66. On March 21, 2020 Mr. Byra was awarded Social Security Disability Benefits.

67. The receipt of SSDI benefits created an overpayment of LTD benefits and Mr. Byra was required to reimburse Defendants the sum of $49,841.00.

68. Due to the receipt of SSDI benefits, Mr. Bya's LTD monthly benefits was reduced to $8,131.00.

69.     After receiving the SSDI reimbursement, the claim note of April 17, 2020, indicates that Defendants focused on determining "if Kenneth Byra is at MMI with no work capacity."  They undertook an "early any occupation assessment."

70.     On April 17, 2020 Defendants' claim representative, Dale Pflieger, conducted a telephone interview of Mr. Byra to discuss his status and prepare for the change in the definition of disability.  During the call Mr. Byra described his ongoing treatment, difficulty sitting and standing due to his pain, and reporting that his daily level of pain was 7-8 out of 10 on average.

71.     In response to Defendants' requests, Mr. Byra submitted updated paperwork including a questionnaire on which he confirmed his disability income from a MassMutual private disability policy and the Social Security Administration.

72.     Mr. Byra submitted a current Attending Physician's Statement that was completed by Dr. Kuo on April 20, 2020.  On the form Dr. Kuo reported Mr. Byra's ongoing restrictions and limitations as "Avoid repetitive movement, no sitting, bending, flexing, sitting or standing for prolonged periods of time." Dr. Kuo reported ongoing treatment including epidural injections, trigger point injections, radiofrequency ablations, home exercises, referrals to specialists, and medications.  On a Capabilities and Limitations Worksheet dated June 12, 2021, Dr. Kuo reiterated that Mr. Byra remains disabled.

73.     On June 17, 2021 Defendants' employees held a "roundtable" review of Mr. Byra's claim and decided to refer Mr. Byra's file to the "Special Investigations Unit." Defendants surmised that Mr. Byra was "over-insured" and "unmotivated" to return to work simply because he was receiving disability benefits from a private insurance policy with MassMutual.  MassMutual had approved of his claim and continues to this day, to pay disability benefits to Mr. Byra.

12

74.     Defendants' initial work up was performing covert internet surveillance of Mr. Byra on Social Media.  The investigation revealed that Mr. Byra had no active social media accounts and his wife had an active account for her own on line marketing business.  Defendants downloaded several pictures taken from Mr. Byra's spouse's accounts, showing the couple at celebrations; particularly, 10-year old wedding pictures were added to Mr. Byra's claim file.

75.     Defendants have an internal rule/policy that requires their Ability Analyst claim staff to refer at least two cases per month for video surveillance.

76.     Finding nothing indicating any suspicious activity, Defendants next referred Mr. Byra's file to Claims Bureau USA to conduct video surveillance of the claimant.

77.     Claims Bureau USA conducted video surveillance of Mr. Byra on four days: June 24, 2020, June 25, 2020, June 30, 2020, and July 8, 2020.  The later date was specifically requested by Defendants since Mr. Byra had told him he had a medical appointment scheduled for that day with Dr. Kuo in NYC, NY.

78.     The video surveillance never showed Mr. Byra performing activities that were contrary to his reports to Defendants or the restrictions and limitations given by his treating doctors.

79.     Claims Bureau USA attempted to surveil Mr. Byra for 23 hours across the four days combined but there were long periods where Mr. Byra was unseen, inactive inside his home.

80.     The only video ever produced to Plaintiff by Defendants is edited video footage totaling 19 minutes and 31 seconds in total. No video recordings of the alleged hours of surveillance have been provided.  Defendants have refused to provide the invoice of Claims Bureau USA, despite Plaintiff's demand for this documentation.

81.     After receiving the surveillance report and footage Defendants' special investigations staff arranged a phone interview with Mr. Byra and an investigator, Anthony Zampino for July 28, 2020, during COVID-19 shut downs.

82.     Without revealing that he had been covertly surveilled for days, the Hartford representative attempted to trap Mr. Byra with questions revolving around his sitting, standing and walking tolerances. Mr. Byra's answers were consistent with the activities he had always reported to Defendants and with what was gathered during the surveillance.

83.     Defendants have an internal rule or policy that when a claimant interview is inconsistent with surveillance activities, the investigator will inform the claimant and ask them to explain their discrepancies.

84.     Mr. Zampino did not make Mr. Byra aware that he had been surveilled since no inconsistencies emerged during the discussion.

85.     The Hartford next turned to the final arrow in their quiver, to require Mr. Byra to submit to a defense medical examination by a doctor of their choosing.

86.     On November 25, 2020, five days before the IME with Dr. Sidhwani, Mr. Byra was evaluated by Dr. Tiedrich.  In his report he documented exam findings that confirmed Mr. Byra's current diagnoses as:

1.  Sprain and strain to the cervical spine with C4-5 bulging annulus with flattening of the ventral margin of the cord and right cervical radiculopathy.
2.  Right cubital tunnel syndrome.
3.  Sprain and strain to the dorsal spine with chronic secondary fibromyositis and myofasciitis and T5-6, T7-8 herniated nucleus pulposus.
4.  Sprain and strain to the lumbosacral spine with chronic secondary fibromyositis and myofasciitis and bilateral lumbosacral radiculitis, L3-4, L4-5 bulging annuli and L5-S1 herniated nucleus pulposus.

87.     Dr. Tiedrich opined that Mr. Byra's physical abilities to sit, stand, and walk were below the requirements for sedentary level work and that the patient was disabled from his own or similar occupations.   He further noted that Mr. Byra's current medications for pain management, including medical cannabis, impaired his mental clarity and ability to process complex information.

88.     Defendants internal notes show that the company considered sending Mr. Byra for a more comprehensive Functional Capacity Evaluation ("FCE") but instead opted for an Insurance Medical Examination ("IME").

89.     Although Mr. Byra is a resident of New Jersey, Defendants arranged for the IME to be performed by Dr. Vijay Sidhwani in New York City on November 30, 2021.

90.     Mr. Byra was accompanied to the IME by a third party nurse, Joy Vincent, who took notes of the proceedings and recorded audio of the pre-IME interview and the exam.

91.     Ms. Vincent's reporting revealed that the pre-IME interview with Dr. Sidhwani's assistant lasted approximately 18 minutes.   Mr. Byra was in the examination room for only 6 minutes and Dr. Sidhwani's exam was recorded to last only 4 minutes and 44 seconds.

92.     In his report of the exam, Dr. Sidhwani stated that all of his findings were within normal limits or negative.

93.     Dr. Sidhwani stated that Mr. Byra's lumbar and left hip conditions had "resolved" and that he was not disabled.

94.     To independently document his condition, ten days after the insurance medical examination, on December 10, 2020 Mr. Byra underwent an examination performed by Gerardo Goldberger, an Orthopaedic Surgeon. Dr. Goldberger performed a physical examination and reviewed Mr. Byra's diagnostic studies and notes from his other providers.

95.     Dr. Goldberger's exam revealed objective findings consistent with Dr. Tiedrich's 11/25/20 assessment, including reduced range of motion in the lumbar spine, abnormal gait, and diminished sensation in the legs.  Dr. Goldberger diagnosed Mr. Byra with degenerative disc disease and arthritis in the lumbar spine from L3-4 through L5-S1, with a bulging disc at L4-5 and a herniated disc at L5-S1, along with an annular tear at C4-5 of the cervical spine.

96.     Dr. Goldberger assessed that Mr. Byra's conditions prevent him from sitting or standing for prolonged periods of time and that his ability to obtain restorative sleep was disrupted by pain and stiffness at night.  Dr. Goldberger opined that Mr. Byra was permanently disabled.

97.     Defendants asked Dr. Sidhwani to review Dr. Tiedrich and Dr. Goldberger's reports and provide an addendum to his IME.  In his response Dr. Sidhwani could give no explanation for why his findings were so drastically different than examinations just days apart and stood by his conclusions.

98.     Defendants proceeded to deny Mr. Byra's claim by letter dated February 1, 2021.

## APPEAL

99.     On October 14, 2021, Plaintiff challenged Defendants' denial by submitting a detailed claim appeal pursuant to 29 U.S. C. S 1133 and 29 C.F.R. S 2560.603-1, which was supported by additional medical evidence from all treating doctors.

100.    The appeal included a Functional Capacity Evaluation conducted at BEST Associates on May 27, 2021 by Susan Greenberg, P.T.  Ms. Greenberg concluded that Mr. Byra did not demonstrate an ability to tolerate an 8-hour work day or even part-time work at a sedentary physical demand level., Ms. Greenberg assessed that Mr. Byra was disabled due to diminished

positional tolerances in sitting, standing, and walking for extensive periods, fatigue and deterioration of movements as tasks progress, and below average hand coordination.

101.   The appeal included the transcript of a telephone interview between counsel and Dr. Allan Tiedrich that took place on July 13, 2021.  Dr. Tiedrich discussed his assessment of the objective evidence of Mr. Byra's cervical and lumbar spinal pathology and the course of treatment with pain medication and physical therapy.   Dr. Tiedrich explained why Hartford's video surveillance and IME by Dr. Sidhwani were not persuasive and reiterated his assessment that Mr. Byra was totally disabled.

102.   The appeal included a detailed narrative statement by Mr. Byra describing his medical and occupational history as well as the ongoing symptoms that continue to disable him. Mr. Byra described his severe chronic pain, side-effects from his medication regimen, including cognitive deficits, and how they prevented him from returning to work.

103.   The appeal included a comprehensive vocational evaluation performed by Mary Vasishth, MS, CRC, a vocational rehabilitation consultant who is regularly retained by the Social Security Administration to furnish vocational opinions.  Ms. Vasishth reported that, contrary to defendants' determination, due to his medical condition, as substantiated by the FCE and his doctor's assessments, Mr. Byra is unable to perform his own or any other reasonable occupation under the terms of the policy.  The appeal contained the transcript of her in-person interview with Mr. Byra wherein he explained the frequency, severity and duration of his pain with his limited ability to maintain a postural position including sitting, standing or walking.

104.   The appeal included updated medical records by Dr. Wayne Fleischhacker, and was supplemented on November 30, 2021 with additional records and a completed Questionnaire.  The

records revealed that Mr. Byra's debilitating pain required almost monthly interventional procedures such as epidural steroid injections, branch block injections, and radiofrequency nerve ablations. In his questionnaire responses Dr. Fleischhacker confirmed his support for Mr. Byra's ongoing total disability, specifically noting his agreement with Ms. Greenberg's FCE findings and that her assessments were consistent with his findings.

105.   With the 90-day deadline for the appeal decision pending on January 13th, 2021, on January 5, 2022 Defendants provided Plaintiff with an Employability Analysis Report and a Peer Review report by Dr. Ronald Lieberman, dated December 17, 2021. Dr. Lieberman's peer review report did not find Mr. Byra disabled.   The Employability Analysis Report, relying on Dr. Lieberman's conclusions, opined that Mr. Byra could return to work in his own occupation.

106.   On February 24, 2022 Counsel submitted a comprehensive response to the reports provided by Defendants.   The submission included updated medical records and a Questionnaire by Dr. Tiedrich, an Attending Physician's Statement completed by Dr. Fleischhacker, and an transcript of an interview between counsel and Mr. Byra.   Counsel pointed out numerous errors and omissions in Dr. Lieberman's report, key pieces of evidence from the appeal that he failed to comment on and noted that the Employability Analysis Report was flawed and impermissible since it was based on only Dr. Lieberman's opinions and ignored all other evidence in the record.

107.   Instead of rendering a decision on the appeal, over the next several months Defendants repeatedly elicited addendums from Dr. Lieberman, in which he always stuck by his opinion that Mr. Byra is not disabled.

108.   Dr. Lieberman performed perfunctory addendum reviews dated 3/15/22, 3/18/22, 5/3/22, and 6/8/22.   With each review Dr. Lieberman reiterated that his initial opinion that Mr.

Byra was not disabled was unchanged and consistently dismissed criticism of his conclusions.  For example, in his 3/15/22 and 3/18/22 addendums Dr. Lieberman incorrectly implied that Plaintiff was not undergoing physical therapy and therefore receiving insufficient treatment.  Upon it being pointed out to him that Mr. Byra had been in a physical therapy program for years through the present, Dr. Lieberman then countered that Mr. Byra's ability to participate in physical therapy sessions was evidence that he was not disabled.

109.   Defendants final communication to Plaintiff was a letter dated July 7, 2022 which indicated that an update on the status of the appeal would be provided "as soon as possible."

110.   As of August 5, 2022 Defendants have failed to render a decision on Mr. Byra's claim.  Pursuant to ERISA guidelines, in accordance with 29 C.F.R. §2560-503-1(1) this claim is deemed exhausted.

111.   Notwithstanding ERISA's obligation to provide claimants with a "full and fair review" as required by 29 U.S.C.  S 1133 and 29 C.R.F. S 2560.503-1 and to apply fiduciary standards in adjudicating Plaintiff's claim in accordance with 29 U.S.C S 1104(a)(1), Defendants failed to consider and afford appropriate weight to all of the evidence submitted in support of Plaintiff's claim and appeal.

112.   Defendants failed to consider and afford appropriate weight to all of Mr. Byra' impairments, restrictions, and limitations.

113.   Plaintiff has fulfilled all conditions precedent to satisfy the proof of loss provision of the Policy.

114.    Plaintiff remains unable to return to work at his own or any reasonable occupation.

## DEFENDANT(S) CONFLICT OF INTEREST

115.   At all relevant times, Defendants have been operating under an inherent and structural conflict of interest.

116.   Defendants as both the claims administrator and the payer of benefits under the Plan were influenced by its financial conflict of interest when evaluating and denying this expensive LTD benefit claim.

117.   Hartford admits in its denial letter that "All claims and appeals for disability benefits are to be adjudicated in a manner designed to ensure the independence and impartiality of the persons involved in making the decision.  The role of the ability analyst team needs leaders and appeals specialists is to undertake fair and accurate claim assessments with the goal of paying all valid claims. Financial self-interest, either the companies or that of the claims or appeals staff, must not influence individual claim management."

118.   Defendants relied on biased employees and consultants to assist in Mr. Byra' claim evaluation.

119.   At all times relevant to this Complaint, Hartford Ability Analysts participate in The Hartford's Annual Incentive Plan.

120.   Hartford employee's performance reviews are focused on the metrics of their claims handling.

121.   Hartford rewards its employees for decisions that contribute to "The Hartford Group Benefits Claim Strategy of delivering profitable growth."

122.   Defendants took no action to resolve the discrepancy between the opinions of Mr. Byra' treating physicians that he is totally disabled and the opinion of their medical reviewer, Dr. Lowenstein.

123.   Defendants questioned the credibility of Mr. Byra by denouncing his symptoms and ignoring the chronicity of his objectively verified limitations.

124.   Defendants failed to give any weight to the conclusion of the SSA that Mr. Byra is totally disabled under their strict standards, which are more restrictive than the Policy terms and conditions for disability.

125.   Defendants owed fiduciary duties to Mr. Byra and breached those fiduciary duties by acting directly against Mr. Byra' interest for its own gain.

126.   Defendants terminated Mr. Byra' disability claim without any evidence that his medical conditions had improved and he would be able to reenter the workforce in his own or any occupation at any time.

127.   The Defendants have violated ERISA  29 C.F.R.§ 2560.503-1(m)(8) by failing to provide documents requested during the appeal review, including the credentials of Dr. Lieberman, the entire video surveillance recordings, the billing for Claims Bureau U.S.A. and other relevant documents.

128.   Upon information and belief, Defendants' employees use claim procedures and guidelines which serve as Defendant's "reasonable claims procedures" within the meaning of ERISA, 29 C.F.R.2560.503-1(b).

129.   Defendants violated its own written claim procedures in handling Mr.  Byra's claim.

## FIRST CAUSE OF ACTION

130.   Mr.  Byra incorporates the allegations contained in paragraphs 1 through #129 as though set forth at length herein.

131.   Defendants failed and refused to pay Mr.  Byra LTD benefits.

132.   Plaintiff's claim is brought pursuant to 29 U.S.C. § 1132(a)(1)(b) which permits a plan participant to bring a civil action to recover benefits due under the terms of a plan, to enforce his rights under the terms of a plan and /or to clarify his rights to future benefits under the terms of a plan.

133.   An actual controversy exists between Mr.  Byra and Defendants arising out of the events alleged herein above. Specifically, Defendants have no legal basis for denying Mr.  Byra LTD benefits.

134.   Mr.  Byra has satisfied all conditions precedent under the Plan and is thus eligible to receive benefits for Mr. Byra has not waived or otherwise relinquished his entitlement to benefits under the Plan.

135.   The evidence establishes his right to LTD benefits based on his inability to perform the material duties of his occupation and any reasonable occupation.

136.   Contrary to clear, compelling and substantial medical evidence, Defendants wrongfully denied Mr.  Byra's total disability claim and has wrongfully maintained that denial to this date.   Defendants' denial of the benefits was contrary to and in breach of the terms of the Plan and the Policy.

22

137.   Defendants' evaluation of Mr. Byra' claim was adversarial, the product of bias, self-interest and the structural conflict of interest inherent in defendant's dual role as the party deciding entitlement to benefits and the source of the payment of benefits.  As a result, Defendants issued a rubber stamp affirmance of the denial of benefits that failed to meet the requirements of a full and fair review. Defendants' conduct was so grossly biased and ignorant of the well- reasoned opinions of the treating doctors, the outcome of an independent FCE and the decision of the Social Security Administration that it violates its fiduciary responsibilities and duties required under ERISA.

138.   Defendants' evaluation of Mr. Byra' claim was contrary to ERISA fiduciary requirements mandating the application of "higher than marketplace quality standards" as set forth in *Metropolitan Life Ins. Co. v. Glenn*, 128 S. Ct. 2343 (2008).  Defendants violated the higher-than-marketplace standards that ERISA imposes on insurers.

139.   Defendants are required to discharge its duties "solely in the interests of the participants and beneficiaries of the plan."

140.   Defendants represented to Mr.  Byra that benefits would be paid if he met the terms and conditions of the Plan, but failed to fulfill its obligation to discharge its duties solely in the interest of Plan participants.

141.   As a direct and proximate result of the aforementioned conduct of the Defendants in failing to pay Mr.  Byra LTD benefits, Mr.  Byra has been damaged in an amount equal to the amount of benefits to which he is entitled under the terms of the Plan, plus other equitable relief and interest, for a total amount to be determined at the time of trial.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment as follows:

1.      That the Court enter judgment in Plaintiff's favor and against the Defendants and the Court order the Defendants to reinstate Plaintiff's long-term disability benefits and pay benefits owed in arrears since January 31, 2021, as well as issue ongoing benefits conditioned upon Plaintiff continuing to meet the policy's terms and conditions.

2.      That the Court award Plaintiff pre-judgment interest on all overdue benefit payments and all other contractual and/or equitable relief to which he may be entitled under the law for ERISA violations.

3.      That the Court award Plaintiff attorney's fees pursuant to 29 U.S.C. §1132(g) and ERISA § 502(g) and the costs of suit.

Respectfully submitted,

Dated: August 5, 2022

s/ Bonny G. Rafel
Bonny G. Rafel
BONNY G. Rafel LLC
17 Hanover Road, Suite 410
P.O. Box 97
Florham Park, NJ 07932-0097
Phone: (973) 845-2600
Fax: (973) 845-2232
bonny@bgrafel.com